**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UMG RECORDINGS, INC, CAPITOL RECORDS, LLC, CONCORD BICYCLE ASSETS, LLC, CMGI RECORDED MUSIC ASSETS LLC, SONY MUSIC ENTERTAINMENT, and ARISTA MUSIC | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No.  23-cv-7133 (LGS) |
| | ) |
| INTERNET ARCHIVE, BREWSTER KAHLE, KAHLE/AUSTIN FOUNDATION, GEORGE BLOOD, and GEORGE BLOOD, L.P. | )<br>)<br>) |
| | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION TO TRANSFER VENUE**

## Table of Contents

Introduction ......................................................................................................................1

Background......................................................................................................................3

    I.   Plaintiffs are record companies with strong connections to New York.............................3

    II.  Internet Archive has engaged in a long-running massive infringement scheme that has caused hundreds of thousands of infringements in New York. ....................................3

    III.  All Defendants have actively participated in and knowingly contributed to Internet Archive's infringement. ..............................................................................................4

Legal Standard.................................................................................................................6

Argument ........................................................................................................................7

    I.   Personal Jurisdiction in the filed forum is irrelevant to a motion to transfer under § 1404(a)...................................................................................................................7

    II.  New York has personal jurisdiction over all Defendants because they knowingly contributed to Internet Archive's infringements in New York. ...................................10

        A.   All Defendants knowingly participated in and contributed to Internet Archive's infringement in New York. .....................................................................................10

        B.   Defendants' contributions to Internet Archive's infringement in New York satisfies the long-arm statute's requirement that Defendants expected or should reasonably have expected their actions to have consequences in New York. ...................................11

        C.   Defendants' knowing contributions to Internet Archive's infringement in New York are sufficient contacts with New York to satisfy due process. ...................................12

    III.  Defendants have not carried their burden of showing by clear and convincing evidence that Plaintiffs' choice of forum should be disturbed.................................................14

        A.   Plaintiffs' choice of forum is entitled to substantial deference because multiple Plaintiffs are located in New York and all Plaintiffs have significant connections to New York. .................................................................................................................14

        B.   The Southern District of New York is the locus of operative facts regarding ownership and fair use and Defendants exaggerate the Northern District of California's significance to the issues in the case..................................................................................16

        C.   The convenience of witnesses and the parties does not favor transfer because Defendants have not identified witnesses who would be inconvenienced and most witnesses are located outside the Northern District of California. .........................................19

        D.   Access to evidence does not favor transfer because there is no evidence the physical records at issue are in California and the physical 78-rpm records are minimally relevant..22

        E.   The interests of justice do not favor transfer because transferring the case to the Northern District of California would reward Defendants' attempt to forum-shop. .............23

Conclusion....................................................................................................................24

## Table of Authorities

**Cases**

*Abdin v. CBS Broad. Inc.*,
   971 F.3d 57 (2d Cir. 2020) ................................................................................20

*Arma v. Buyseasons, Inc.*,
   591 F. Supp. 2d 637 (S.D.N.Y. 2008) .................................................................24

*Aspen Speciality Ins. Co. v. RCI Hosp. Hodlings, Inc.*,
   No. 20–CV–4308 (VSB), 2023 WL 4080550 (S.D.N.Y. June 20, 2023) ..................11

*Atl. Recording Corp. v. BCD Music Grp., Inc.*,
   No. 08 CIV. 5201 (WHP), 2009 WL 1390848 (S.D.N.Y. May 7, 2009) ..................28

*Blue Ribbon Pet Prod., Inc. v. Rolf C. Hagen (USA) Corp.*,
   66 F. Supp. 2d 454 (E.D.N.Y. 1999) ...........................................................15, 16

*Capitol Records, Inc. v. Kuang Dyi Co. of RM*,
   2004 WL 405961 (S.D.N.Y. Mar. 1, 2004) ......................................................9, 19

*Capitol Records, LLC v. VideoEgg, Inc.*,
   611 F. Supp. 2d 349 (S.D.N.Y. 2009) .................................................................21

*Casey v. Odwalla, Inc.*,
   338 F. Supp. 3d 284 (S.D.N.Y. 2018) ..................................................................7

*Commodity Futures Trading Comm'n v. EOX Holdings LLC*,
   No. 18 CIV. 8890 (GBD), 2019 WL 5203661 (S.D.N.Y. July 31, 2019) ..................27

*EMI Christian Music Grp., Inc. v. MP3tunes, LLC*,
   844 F.3d 79 (2d Cir. 2016) ................................................................................22

*Enigma Software Grp. USA, LLC v. Malwarebytes Inc.*,
   260 F. Supp. 3d 401 (S.D.N.Y. 2017) .................................................................10

*Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*,
   928 F. Supp. 2d 735 (S.D.N.Y. 2013) .................................................................10

*Freeman v. Hoffmann-La Roche Inc.*,
   No. 06–CIV–13497 (RMB) (RLE), 2007 WL 895282 (S.D.N.Y. Mar. 21, 2007) ....29

*G. Angel Ltd. v. Camper & Nicholsons USA, Inc.*,
   No. 06 CIV. 3495(PKL), 2008 WL 351660 (S.D.N.Y. Feb. 8, 2008) ......................10

*Garnish & Gather, LLC v. Target Corp.*,
   No. 19–CV–10404 (JSR), 2019 WL 6729152 (S.D.N.Y. Dec. 11, 2019) ................18

*Gucci Am., Inc. v. Frontline Processing Corp.*,
   721 F. Supp. 2d (S.D.N.Y. 2010) .......................................................................14

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984) .........................................................................................15

*Keeton v. Hustler Mag., Inc.*,
   465 U.S. 770 (1984) .........................................................................................16

*Liberty Mut. Ins. Co. v. Fairbanks Co.*,
   17 F. Supp. 3d 385 (S.D.N.Y. 2014) ...................................................................25

*Mazuma Holding Corp. v. Bethke*,
   1 F. Supp. 3d 6 (E.D.N.Y. 2014) ........................................................................25

*Medien Pat. Verwaltung AG v. Warner Bros. Ent.*,
   749 F. Supp. 2d 188 (S.D.N.Y. 2010) ...........................................................17, 26

*Mohamed v. Tesfaye*,
   No. 18–CV–8469(JSR), 2019 WL 1460401 (S.D.N.Y. Jan. 24, 2019) .......................10
*N. Food I/E, Inc. v. OCM Globe Inc.*,
   No. 21–CV–1813 (MKB), 2022 WL 2812204 (E.D.N.Y. Mar. 28, 2022) ...........................19
*N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*,
   599 F.3d 102 (2d Cir. 2010)..............................................................................................7
*Pence v. Gee Grp., Inc.*,
   236 F. Supp. 3d 843 (S.D.N.Y. 2017) ..............................................................................18
*Penguin Grp. (USA) Inc. v. Am. Buddha.*,
   946 N.E.2d 159 (N.Y. 2011) ..............................................................................................13
*Pilates, Inc. v. Pilates Inst., Inc.*,
   891 F. Supp. 175 (S.D.N.Y. 1995) ...................................................................................24
*Rindfleisch v. Gentiva Health Sys., Inc.*,
   752 F. Supp. 2d 246 (E.D.N.Y. 2010)..............................................................................18
*Smart Skins LLC v. Microsoft Corp.*,
   No. 14 CIV. 10149 CM, 2015 WL 1499843 (S.D.N.Y. Mar. 27, 2015) ...................................21
*Stewart v. adidas AG*,
   No. 96 CIV. 6670 (DLC), 1997 WL 218431 (S.D.N.Y. Apr. 30, 1997) ...................................14
*Tianhai Lace USA Inc. v. Forever 21, Inc.*,
   No. 16–CV–5950 (AJN), 2017 WL 4712632 (S.D.N.Y. Sept. 27, 2017)..............................17
*Troma Ent., Inc. v. Centennial Pictures Inc.*,
   729 F.3d 215 (2d Cir. 2013)............................................................................................13
*Viacom Int'l Inc. v. Melvin Simon Prods., Inc.*,
   *774 F. Supp. 858 (S.D.N.Y. 1991)* ..................................................................................23
*Walden v. Fiore*,
   571 U.S. 277 (2014) ........................................................................................................15
*Wiwa v. Royal Dutch Petroleum Co.*,
   226 F.3d 88 (2d Cir. 2000)..............................................................................................17
*Zohar CDO 2003–1, Ltd. v. Patriarch Partners, LLC*,
   620 B.R. 456 (S.D.N.Y. 2020)..........................................................................................27

## Statutes

17 U.S.C. § 106(1)..............................................................................................................18
17 U.S.C. § 106(3)..............................................................................................................19
17 U.S.C. § 107(4)..............................................................................................................18
28 U.S.C. § 1400(a).............................................................................................................8
28 U.S.C. § 1404(a)...........................................................................................6, 7, 8, 19
28 U.S.C. § 1406(a).............................................................................................................8
N.Y. CPLR § 302(a) ..........................................................................................................11

## Rules

Fed. R. Civ. P. 12(b)(3)......................................................................................................9
Fed. R. Civ. P. 26(a)(1)(A)(i)...........................................................................................20

## Treatises

17 Daniel R. Coquillette, Gregory P. Joseph, Georgene M. Vairo, Chilton Davis Varner, *Moore's Federal Practice—Civil* § 111.02 (2023) ........................................................................9

**Other Authorities**

Chris Eggersten, *Universal Music to Waive Unrecouped Advances for Legacy Artists*,
    BILLBOARD PRO,
        https://www.billboard.com/pro/universal-music-group-waive-legacy-artists-songwriters-
        unrecouped-royalties/ (Mar. 31, 2022) ...................................................................................17

Dan Rys, *How Sony's Legacy Artist Royalty Plan Is Both Generous and Savvy*, BILLBOARD PRO,
    https://www.billboard.com/pro/sony-music-legacy-royalties-analysis/ (Jun. 24, 2021)...........17

Glenn Peoples, *Sony Music Extends Program for Unrecouped Artists and Songwriters*,
    BILLBOARD PRO,
        https://www.billboard.com/pro/sony-music-artists-songwriters-forward/ (May 6, 2022) ........17

**Introduction**

Defendants have not come close to carrying the heavy burden they bear to show by clear and convincing evidence that the convenience of witnesses and the interests of justice require transferring venue to the Northern District of California.

Defendants' argument that some of the defendants are not subject to personal jurisdiction in New York is both irrelevant and wrong.  Personal jurisdiction in the filed forum is not a relevant factor in a venue transfer analysis.  In any event, New York has jurisdiction over all Defendants.  Internet Archive's mass distribution of infringing recordings into New York subjects it to jurisdiction in New York, and the rest of the Defendants, by knowingly and materially contributing to that mass infringement in New York, have also subjected themselves to jurisdiction in New York.

On venue, Defendants disregard the first maxim: a plaintiff's choice of forum is entitled to substantial deference.  That is especially the case where, as here, some of the Plaintiffs are at home in this forum and the other Plaintiffs have significant presences here.  Plaintiffs' choice of forum should not be disturbed unless other factors overwhelmingly favor transfer; they do not.

The locus of operative facts encompasses several different locations.  The operative facts with regard to Plaintiffs' ownership and the market for Plaintiffs' works, both of which are significant legal issues in the case, have strong connections to the Southern District of New York, where all Plaintiffs have substantial operations.  The operative facts with regard to Defendants' infringement touch on the Southern District of New York, the Northern District of California, and Pennsylvania.  As the Northern District of California's connections to the operative facts do not dominate over the others, this factor does not favor transfer.

Nor do the convenience of witnesses and the parties favor transfer.  Defendants have failed to identify specific witnesses who would be inconvenienced by testifying in the Southern District of New York.  As it stands, most of the witnesses are located outside the Northern District of California, and transferring the case would just shift any potential inconvenience from Defendants to Plaintiffs.  Moreover, Defendants' absurd argument that San Francisco is more convenient than New York for Philadelphia-based George Blood and George Blood L.P. should be given no weight.

Access to evidence also does not justify transfer.  Defendants argue that the location of the physical 78-rpm records is partially in California.  But this argument does not support transfer because the underlying *physical* records are not at issue in this case.  This case is about *digital* copies, which were created in Philadelphia and are stored on a server.  In any event, Defendants have not established that those physical records, and particularly the records for the sound recordings at issue in this case, are actually in California.

Defendants' attempt to escape this forum is no doubt driven by Internet Archive's recent loss in another major copyright infringement case in this forum.  Earlier this year, a court in this district, after Internet Archive did not seek to transfer venue, rejected Internet Archive's attempt to claim fair-use protection for its systematic copying and distribution of copyrighted books.  The Court should reject Defendants' attempt to forum-shop.

As Defendants have failed to show that any factors favor transfer by clear and convincing evidence, Plaintiffs' choice of forum should not be disturbed.  Defendants' motion to transfer should be denied.

## Background

**I.      Plaintiffs are record companies with strong connections to New York.**

Plaintiffs are record companies that produce, manufacture, distribute, sell, license, and otherwise commercialize sound recordings in the United States and the world through various media.  Compl. ¶ 21.  Plaintiffs own protected rights in, and/or control exclusive rights with respect to, millions of sound recordings (*i.e.*, recorded music), including by some of the most popular and well-known recording artists throughout the world.  *Id.*

Plaintiffs Sony Music Entertainment ("SME") and Arista Music ("Arista") have their principal places of business in New York, NY.  Decl. of Wade Leak in Supp. of Pls.' Opp. to Defs.' Mot. to Transfer Venue ¶ 3 ("Leak Decl.").  Plaintiffs UMG Recordings, Inc. ("UMG") and Capitol Records, Inc., ("Capitol") have their principal places of business in Los Angeles, CA.  Decl. of Alasdair McMullan in Supp. of Pls.' Opp. to Defs.' Mot. to Transfer Venue ¶ 3 ("McMullan Decl.").  UMG maintains three offices with approximately 500 employees in New York across a range of functions, but does not have any offices in San Francisco.  *Id.* ¶¶ 4-5.

Plaintiff CMGI Recorded Music Assets, LLC, ("CMGI") has its principal place of business in Nashville, Tennessee.  Decl. of Gregg Goldman in Supp. of Pls.' Opp. to Defs.' Mot. to Transfer Venue ¶ 3 ("Goldman Decl.").  CMGI maintains a substantial office in New York, with 136 employees performing significant operations.  *Id.* ¶ 4.  CMGI has no offices in San Francisco, California.  *Id.* ¶ 5.  Concord Bicycle Assets, Inc. ("CBA") has no offices or employees of its own; all of its functions and operations are handled by CMGI.  *Id.* ¶ 6.

**II.     Internet Archive has engaged in a long-running massive infringement scheme that has caused hundreds of thousands of infringements in New York.**

This suit seeks to address Defendants' massive infringement of Plaintiffs' protected sound recordings.  Defendants have created an online music store where anyone can stream or

download Plaintiffs' protected sound recordings for free.  Defendants have caused millions of streams and downloads of protected sound recordings without paying a single dime to any rightsholders, including more than 500,000 streams and downloads in New York since 2020. Defendants have actively promoted the ability to download and stream recordings from Internet Archive's website, including by advertising specific recordings on social media platforms.

Defendants' claim that they have merely created a historical preservation archive cannot be squared with their conduct.  If Defendants were running a truly archival project, they would not have built a platform for anyone to download and stream music for free.  Archivists work hand-in-hand with rights owners and do not distribute infringing works to the public.  And archivists do not need to protect works that—like all of the sound recordings at issue in this case, Compl. ¶ 89— are still widely available in the marketplace.  There is no need to preserve a recording anyone can access on Spotify or Apple Music, which is the case for every work at issue in this lawsuit.  Nor can Defendants' claim that they preserve the "hisses and pops" of 78-rpm records justify their infringement.

### III.  All Defendants have actively participated in and knowingly contributed to Internet Archive's infringement.

While Defendant Internet Archive runs the website that streams and distributes Plaintiffs' protected sound recordings, all of the Defendants directly participate in Internet Archive's infringement.  Defendant Brewster Kahle ("Kahle") is Internet Archive's Founder, chief executive, and Chair of the Board, where he manages Internet Archive's day-to-day operations and directly oversees Internet Archive's infringing activity.  Compl. ¶¶ 70–73.  Defendant Kahle/Austin Foundation (the "Foundation"), of which Kahle is President, is the personal charitable donations vehicle for Kahle and his wife.  Compl. ¶¶ 11, 75.  Through the Foundation, Kahle has funded the large majority of Internet Archive's infringing activity.  Compl. ¶ 76.

4

Indeed, Internet Archive's webpage for each recording at issue in this lawsuit identifies the

Foundation as the "Digitizing sponsor:"



Compl. ¶¶ 50, 76 (quoting *White Christmas by Bing Crosby*, INTERNET ARCHIVE,

https://archive.org/details/78_white-christmas_irving-berlin-bing-crosby-ken-darby-singers-john-

scott-trotter-and_gbia0000275a) (arrow added for emphasis).  After Plaintiffs filed the

Complaint, Internet Archive scrubbed the references to the Foundation as the Digitizing Sponsor

from its website, but changing the evidence cannot rewrite history.

Defendants George Blood ("Blood") and George Blood L.P. ("GBLP") created the digital

files that Internet Archive's website provides for streaming and downloading.  Compl. ¶¶ 48–49;

Kahle Decl. ¶¶ 4–5.  Blood and GBLP knew that Internet Archive was posting those digital files

on its website for unlimited streaming and downloading.  Compl. ¶¶ 90–92.  Blood and GLBP

have also helped market and publicize Internet Archive's infringing scheme.  *Id.*  Blood and

GBLP are located in Fort Washington, Pennsylvania just outside Philadelphia, and performed

their digitization work there.  Compl. ¶¶ 32–33; Kahle Decl. ¶¶ 4–5.

In 2020, both Senator Thom Tillis, then-Chair of the Senate Subcommittee on Intellectual Property, and the Recording Industry for America (the "RIAA")[1] each wrote to Kahle and Internet Archive.  Senator Tillis explained that the Great 78 project "does not appear to comply with the relevant portions of the Orrin G. Hatch–Bob Goodlatte Music Modernization Act (MMA), which deals only with pre-1972 sound recordings and would not allow for streaming or downloading."  Compl. ¶ 79 (quoting Ltr. from Sen. Thom Tillis to Brewster Kahle (June 20, 2020)).  Senator Tillis added that "I am concerned that the Internet Archive thinks that it—not Congress—gets to determine the scope of copyright law. . . . Internet Archive seems to be daring copyright owners to sue to enforce their rights . . . ."  *Id.*  The RIAA informed Kahle and Internet Archive that their conduct "is a plain violation of the RIAA member companies' rights under the Classics Protection and Access Act (Classics Act), 17 U.S.C. § 1401, and constitutes nothing less than piracy on a massive scale."  Compl. ¶ 80 (quoting Ltr. from Ken Doroshow to Brewster Kahle (July 22, 2020)).  The RIAA demanded that Kahle and Internet Archive immediately cease and desist from their infringement.  *Id.*  Defendants ignored this demand.

## Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).

Transfer under § 1404(a) has two parts.  First, the court considers whether the action "might have been brought" in the proposed venue.  *Id.*; *Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 291 (S.D.N.Y. 2018).  If so, the court then determines whether the "the convenience of

---

[1] The RIAA is a trade association whose members, including some of the Plaintiffs, create, manufacture and/or distribute sound recordings representing the great majority of all legitimate recorded music consumption in the United States.  *About RIAA*, RIAA, https://www.riaa.com/about-riaa/ (last visited Nov. 14, 2023).

parties and witnesses" and "the interest of justice" justify transfer.  28 U.S.C. § 1404(a); *Casey*, 338 F. Supp. 3d at 292.  On this issue, the court weighs several factors, including "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties."  *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010).  "No one factor is dispositive and the relative weight of each factor depends on the particular circumstances of the case."  *Casey*, 338 F. Supp. 3d at 292 (internal quotation marks omitted).

"[T]he party requesting transfer carries the 'burden of making out a strong case for transfer.'"  *Id.* at 114 (quoting *Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 521 (2d Cir. 1989).  Accordingly, the movant must show that the discretionary factors favor transfer by "clear and convincing evidence."  *Id.*

## Argument

### I.    Personal Jurisdiction in the filed forum is irrelevant to a motion to transfer under § 1404(a).

Defendants go beyond the unremarkable point that this case could have been filed in the Northern District of California[2] to shoehorn in nearly six pages of argument that the Southern District of New York lacks personal jurisdiction over some of the Defendants.  This argument is as misplaced as it is wrong.  Personal jurisdiction is entirely irrelevant to the transfer motion before the Court and Defendants mistakenly conflate the independent issues of jurisdiction and transfer.  Defendants cite no authority that personal jurisdiction in the filed forum has any

---

[2] As Internet Archive, Kahle, and the Foundation are based in or have offices in San Francisco, and Blood and GBLP have stipulated to jurisdiction there, Plaintiffs do not dispute that subject-matter jurisdiction, personal jurisdiction, and venue would exist in the Northern District of California.

relevance to a motion to transfer under § 1404(a).  Further, Defendants flout the Court's explicit directive to brief *only* the transfer issues, and not jurisdictional issues.  Order, ECF No. 44 ("Defendants shall file a single *transfer* motion . . . .") (emphasis added).

Moreover, Defendants conceded the irrelevance of personal jurisdiction to their motion by not challenging the propriety of venue and by moving to transfer under § 1404(a) rather than under 28 U.S.C. § 1406(a).  Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  "When venue in the original district is proper, Section 1404(a) (the convenience transfer statute) applies; when venue is wrong, Section 1406(a) (the improper venue statute) applies."  17 Daniel R. Coquillette, Gregory P. Joseph, Georgene M. Vairo, Chilton Davis Varner, *Moore's Federal Practice—Civil* § 111.02 (2023).  For copyright actions, personal jurisdiction and venue are coextensive.  The copyright venue statute provides that "[c]ivil actions, suits, or proceedings arising under any Act of Congress relating to copyrights . . . may be instituted in the district in which the defendant or his agent resides or may be found."  28 U.S.C. § 1400(a).  Under this statute, a party "may be found" wherever it is subject to personal jurisdiction.  *Capitol Records, Inc. v. Kuang Dyi Co. of RM*, 2004 WL 405961, at *2 (S.D.N.Y. Mar. 1, 2004) ("It is well-established that a defendant 'may be found' in any district in which he is amenable to personal jurisdiction; thus, venue and jurisdiction are coextensive.").

Reading these statutes together, if Defendants wanted to seek transfer on the ground that venue was improper in this Court under § 1400(a) due to a lack of personal jurisdiction, they needed to challenge venue and seek transfer under § 1406(a), not under § 1404(a).  But in neither their pre-motion letters nor in their motion have Defendants argued that venue is improper in the

Southern District of New York, and Defendants' pre-motion letters did not seek leave to file a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3).  Having chosen not to challenge venue on the basis that this Court lacks personal jurisdiction, Defendants cannot now argue that the Court should transfer venue due to a lack of personal jurisdiction.

   In addition, Defendants misstate the holdings of the cases on which they rely to argue that personal jurisdiction in the filed forum is relevant to a transfer motion.  For example, Defendants quote extensively from *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, but *Everlast* held only that jurisdictional doubts can favor shifting the *order* of analysis and resolving the transfer question first, before addressing jurisdiction; *Everlast*'s actual transfer analysis did not consider jurisdiction in the filed forum as a relevant factor.  928 F. Supp. 2d 735, 742–48 (S.D.N.Y. 2013).  The same is true for the other cases Defendants cite.  *Enigma Software Grp. USA, LLC v. Malwarebytes Inc.*, 260 F. Supp. 3d 401, 409 (S.D.N.Y. 2017) (considering jurisdiction in filed forum only to determine whether to analyze venue transfer before jurisdiction); *Mohamed v. Tesfaye*, No. 18–CV–8469(JSR), 2019 WL 1460401, at *3–*8 (S.D.N.Y. Jan. 24, 2019) (same); *G. Angel Ltd. v. Camper & Nicholsons USA, Inc.*, No. 06 CIV. 3495(PKL), 2008 WL 351660, at *2–*7 (S.D.N.Y. Feb. 8, 2008) (same); *Aspen Speciality Ins. Co. v. RCI Hosp. Hodlings, Inc.*, No. 20–CV–4308 (VSB), 2023 WL 4080550, at *5 (S.D.N.Y. June 20, 2023) (considering transfer only after concluding the court lacked personal jurisdiction).  Because the Court has already decided to resolve the transfer issue before resolving jurisdiction, Defendants' cases are irrelevant.

II.   **New York has personal jurisdiction over all Defendants because they knowingly contributed to Internet Archive's infringements in New York.**

   A.   **All Defendants knowingly participated in and contributed to Internet Archive's infringement in New York.**

Jurisdictional principles establish personal jurisdiction over all Defendants.  Notably, Internet Archive does *not* challenge personal jurisdiction.  This is not surprising, as Plaintiffs' allegations easily establish jurisdiction over Internet Archive.  Plaintiffs allege that Internet Archive "distributes and performs publicly by means of a digital audio transmission Plaintiffs' protected sound recordings to users of its website in New York," and that, "[s]ince the beginning of 2020, New York residents have downloaded or streamed recordings from the Great 78 Project more than 500,000 times, making New York the state with the second-most total downloads and streams in that time."  Compl. ¶ 37.

Having established jurisdiction over Internet Archive, the extension of those jurisdictional contacts to the other Defendants is straightforward.  The other Defendants all directly involved themselves in Internet Archive's infringements in New York.  As Internet Archive's Founder, Chief Executive, and Chair of the Board, Kahle involved himself deeply in overseeing and managing Internet Archive's infringement in New York.  *Id*. ¶¶ 70–73.  At Kahle's direction, the Foundation donated funds to Internet Archive, which Internet Archive used, also at Kahle's direction, to pay costs associated with Internet Archive's infringement.  *Id.* ¶¶ 75–76.  Indeed, Internet Archive itself touts the Foundation's critical role in its infringement: its webpages for each of the thousands of infringing sound recordings at issue named the Foundation as the "Digitizing Sponsor."  *Id.* ¶¶ 49, 76.  Blood and GBLP illegally reproduced Plaintiffs' protected sound recordings for Internet Archive, while knowing and intending that Internet Archive would illegally distribute and publicly perform those copies, including in New York.  *Id*. ¶¶ 37, 48–49, 90–92.

10

**B. Defendants' contributions to Internet Archive's infringement in New York satisfies the long-arm statute's requirement that Defendants expected or should reasonably have expected their actions to have consequences in New York.**

These allegations of the other Defendants' knowing involvement in Internet Archive's infringing activity satisfy the jurisdictional requirements of the New York long-arm statute. The relevant long-arm statute has five elements: (1) the defendant committed a tortious act outside the state; (2) the cause of action arose from that act; (3) the act caused injury to a person or property within the state; (4) the defendant expected or should reasonably have expected the act to have consequences in the state; (5) the defendant derives substantial revenue from interstate or international commerce." N.Y. CPLR § 302(a)(3). Defendants' motion challenges the sufficiency of only (3) and (4). Those challenges fail.

Defendants' argument that no injury occurred within New York because the situs of injury for jurisdictional purposes is the location of the copyright owner completely ignores the hundreds of thousands of streams and downloads in New York. This crucial fact explodes Defendants' reliance on *Penguin Grp. (USA) Inc. v. Am. Buddha*: in *Penguin*, there were no allegations of *any* infringing downloads in New York. 946 N.E.2d 159, 164 (N.Y. 2011). Thus, *Penguin* addressed the situs of injury "[i]n copyright infringement cases involving the *uploading* of a copyrighted printed literary work onto the Internet . . . ." *Id.* at 161 (emphasis added). *Penguin* did not address jurisdiction based on the streaming and downloading of content in New York. Indeed, *Penguin* held that injury occurs in New York when the copyright owner is located there even in the *absence* of any infringement in New York. *Penguin* thus expanded, rather than contracted, New York's jurisdictional reach over copyright infringers by creating an exception to the general rule that "'residence or domicile of the injured party within [New York] is not a sufficient predicate for jurisdiction' under section 302(a)(3)." *Troma Ent., Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 218 (2d Cir. 2013) (quoting *Fantis Foods, Inc. v. Standard Importing*

11

*Co.*, 402 N.E.2d 122, 126 (N.Y. 1980).  Nothing in *Penguin* compels the conclusion that no injury occurs in New York where the defendant distributes infringing copies of an out-of-state plaintiff's protected works in New York; that would turn *Penguin*'s expansion of copyright jurisdiction upside down.[3]  Indeed, *Penguin* supports jurisdiction in New York in this case.

Defendants inaccurately characterize Plaintiffs' jurisdictional allegations as conclusory. To the contrary, Plaintiffs have alleged in detail how each Defendant contributed to Internet Archive's infringement, including Internet Archive's infringement in New York, such that all Defendants expected or should reasonably have expected their involvement to have consequences in New York.  *See supra* 4–5, 10.  Similarly, Plaintiffs have specifically alleged how each Defendant derives substantial revenue from interstate commerce.  Compl. ¶¶ 38–42.

### C.  Defendants' knowing contributions to Internet Archive's infringement in New York are sufficient contacts with New York to satisfy due process.

Exercising jurisdiction over all Defendants in New York satisfies due process because the other Defendants knew Internet Archive was infringing Plaintiffs' protected sound recordings in New York and, possessed with that knowledge, they chose to materially contribute to that infringement in New York.  Jurisdiction requires nothing more: courts have repeatedly held that knowingly contributing to another's infringement in New York subjects the contributory infringer to jurisdiction in New York.  *Stewart v. adidas AG*, No. 96 CIV. 6670 (DLC), 1997 WL 218431, at *6 (S.D.N.Y. Apr. 30, 1997) (sustaining personal jurisdiction over German affiliate of domestic direct infringer where "adidas America did sell allegedly infringing goods in New York. Insofar as adidas A.G. is vicariously or contributorily responsible for those sales, it is subject to personal jurisdiction . . . ."); *Gucci Am., Inc. v. Frontline Processing Corp.*, 721

---

[3] This argument challenging jurisdiction would apply equally to Internet Archive as well as to the other Defendants but, perhaps recognizing its futility, Internet Archive chose not to assert it.

F. Supp. 2d 228, 243 (S.D.N.Y. 2010) (sustaining jurisdiction over payment processors who provided services to a website that sold counterfeit goods where defendants "expected or should have expected that their business relationships with companies like [the infringer] . . . would have consequences in New York . . . ."); *Blue Ribbon Pet Prod., Inc. v. Rolf C. Hagen (USA) Corp.*, 66 F. Supp. 2d 454, 460 (E.D.N.Y. 1999) (holding that "Hagen Canada's out-of-state acts contributed to or induced Hagen USA's infringement . . . within New York and are sufficient to subject it to personal jurisdiction in New York").

Defendants cannot evade these holdings' clear application.  Contrary to Defendants' argument, nothing in *Walden v. Fiore* requires rejecting these cases' conclusion.  Defendants cite *Walden* for the proposition that "the key to assessing personal jurisdiction is the connections 'that the defendant *himself* creates with the forum State.'" Mem. of Law in Supp. of Defs.' Mot. to Transfer Venue at 13 (Nov. 1, 2023), ECF No. 49 ("Mem.") (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphasis in original)).  But Defendants ignore that all Defendants satisfy that requirement here: each Defendant itself created its connection to New York by contributing to Internet Archive's infringement in New York while knowing Internet Archive was infringing in New York.  Similarly, *Helicopteros*'s holding limiting jurisdiction where the "unilateral activity of another party" creates the connections to the forum, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984), is inapposite because Internet Archive's activity was not unilateral: all of the Defendants knowingly participated in and contributed to Internet Archive's infringement in New York.  Not surprisingly, Defendants do not cite any case holding that *Walden* abrogates the line of cases extending jurisdiction to contributory infringers.

Nor can Defendants distinguish *Stewart*, *Gucci*, and *Blue Ribbon*.  Defendants do not even try to distinguish *Gucci*, relying solely on their baseless application of *Walden* to incorrectly

claim that *Gucci* has been overruled.  While Defendants argue that *Stewart* and *Blue Ribbon* do not apply because those cases extended jurisdiction to corporate affiliates accused of contributory infringement, Mem. at 13 n.2, the contributory infringer's status as a corporate affiliate is irrelevant to the holdings of those cases.  For purposes of jurisdiction, separate corporate entities are separate persons.  *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 n.13 (1984) ("[N]or does jurisdiction over a parent corporation automatically establish jurisdiction over a wholly owned subsidiary. Each defendant's contacts with the forum State must be assessed individually.") (internal citations omitted).

Defendants also distort how the concept of foreseeability applies here.  Foreseeability is relevant because Defendants should reasonably have foreseen that their contributions to Internet Archive's infringement would result in infringing conduct in New York, not merely that an injury would occur in New York.  *See Blue Ribbon*, 66 F. Supp. 2d at 461 (holding due process satisfied where "Hagen Canada knew or should have known that the [infringing materials] would be distributed by Hagen USA in New York").  Thus, Defendants misplace their reliance on cases holding that "foreseeability of causing injury in another State . . . is not a 'sufficient benchmark' for exercising personal jurisdiction."  Mem. at 14 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

### III.   Defendants have not carried their burden of showing by clear and convincing evidence that Plaintiffs' choice of forum should be disturbed.

#### A.   Plaintiffs' choice of forum is entitled to substantial deference because multiple Plaintiffs are located in New York and all Plaintiffs have significant connections to New York.

The law is clear that "[a] plaintiff's choice of forum is presumptively entitled to substantial deference."  *Tianhai Lace USA Inc. v. Forever 21, Inc.*, No. 16–CV–5950 (AJN), 2017 WL 4712632, at *5 (S.D.N.Y. Sept. 27, 2017).  That choice "should only be disturbed if the

14

factors favoring the alternative forum are compelling." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 101 (2d Cir. 2000). "'The more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice.'" *Medien Pat. Verwaltung AG v. Warner Bros. Ent.*, 749 F. Supp. 2d 188, 191 (S.D.N.Y. 2010) (quoting *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001) (*en banc*)).

Plaintiffs SME and Arista are headquartered in this district. Compl. ¶¶ 22–23; Leak Decl. ¶ 3. Plaintiffs UMG, Capitol, CBA, and CMGI, while headquartered elsewhere, all have significant operations in and substantial ties to this district. Goldman Decl. ¶¶ 3-4; McMullan Decl. ¶¶ 3-4. Litigating in this district is a natural choice for Plaintiffs given their extensive ties here, and a reason "the law recognizes as valid." Accordingly, Plaintiffs' choice of forum is entitled to substantial deference in the Court's transfer analysis.

While Defendants cite cases holding that "the plaintiff's choice of forum receives less deference when that forum is not the plaintiff's home district," Mem. at 23, they only cite cases in which *none* of the plaintiffs were located in the forum or had ties to the forum. *See Garnish & Gather, LLC v. Target Corp.*, No. 19–CV–10404 (JSR), 2019 WL 6729152, at *2 (S.D.N.Y. Dec. 11, 2019) (finding that plaintiff was a "small Georgia-based company . . . that currently does no business in New York"); *Pence v. Gee Grp., Inc.*, 236 F. Supp. 3d 843, 856 (S.D.N.Y. 2017) (finding that plaintiff "resides in Kentucky, not the Southern District of New York"); *Rindfleisch v. Gentiva Health Sys., Inc.*, 752 F. Supp. 2d 246, 251 (E.D.N.Y. 2010) (finding that plaintiffs were "seeking to try this case in a District in which plaintiffs neither reside nor work"). Those cases do not apply here, where some Plaintiffs are at home in New York and all have a significant presence in the forum.

15

There is no question that Plaintiffs' choice of forum would be entitled to substantial

deference if SME and Arista were the only plaintiffs. Defendants should not benefit from the

fact that they did not confine their infringement to SME's and Arista's works, and that UMG,

Capitol, CBA, and CMGI joined SME and Arista in bringing a single suit rather than instituting

piecemeal litigation around the country. Defendants are not entitled to a volume discount

whereby, because Defendants infringe the rights of many rightsholders, Defendants rather than

Plaintiffs get to choose the forum.

> **B. The Southern District of New York is the locus of operative facts regarding ownership and fair use and Defendants exaggerate the Northern District of California's significance to the issues in the case.**

The operative facts have a significant connection to the Southern District of New York.

*First*, that Internet Archive streamed or distributed copies of protected sound recordings

to New Yorkers on a massive scale alone makes the Southern District of New York a locus of

operative facts. *Capitol Recs., Inc. v. Kuang Dyi Co. of RM*, No. 03 CIV. 0520 (LAP), 2004 WL

405961, at *4 (S.D.N.Y. Mar. 4, 2004) (holding that, where "the allegedly infringing product was

sold in the Southern District of New York" as a result of Defendants' conduct, "New York has a

connection to the locus of operative events, and the 'center of gravity of the litigation' is not

heavily tilted in favor of transfer"); *cf. N. Food I/E, Inc. v. OCM Globe Inc.*, No. 21–CV–1813

(MKB), 2022 WL 2812204, at *9 (E.D.N.Y. Mar. 28, 2022) (holding in trademark infringement

case that "operative facts have a strong connection to Plaintiff's chosen forum" where

"Defendants shipped Infringing Products to New York to be sold at retailers in the district . . .

leading to 12% of overall sales being made in New York").

*Second*, the Southern District of New York is the locus of operative facts regarding

Plaintiffs' ownership of the protected sound recordings at issue. Ownership is the first element

of a copyright claim. *Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 66 (2d Cir. 2020) ("To establish a

claim of copyright infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.") (internal quotation marks omitted).  While Plaintiffs expect their proof of ownership will be irrefutable, Defendants have signaled that they intend to contest Plaintiffs' claims of ownership of the sound recordings at issue and make ownership a significant issue in the case.[4]  Mem. at 7.  The operative facts regarding Plaintiffs' ownership have a strong connection to the Southern District of New York, where two of the Plaintiffs are headquartered and all Plaintiffs have strong connections.  *See supra* 3.  By contrast, the Northern District of California has no connection at all to the operative facts regarding Plaintiffs' ownership.  *Id.*  This case is thus unlike *Capitol Records, LLC v. VideoEgg, Inc.*, on which Defendants heavily rely, because ownership was not a significant issue there and the Court found that "Plaintiffs' ownership of the allegedly infringed copyrights [] is relatively easily established and may very well be the subject of a stipulation by the time of trial."  611 F. Supp. 2d 349, 367 (S.D.N.Y. 2009).  Defendants' reliance on *Smart Skins LLC v. Microsoft Corp.* is also misplaced: in that patent infringement case, the plaintiff was a "patent troll" who, unlike here, failed to identify *any* relevant operative facts that connected the case to New York.  No. 14 CIV. 10149 CM, 2015 WL 1499843, at *8 (S.D.N.Y. Mar. 27, 2015).

*Third*, the Southern District of New York has a strong connection to operative facts regarding fair use.  Defendants have indicated they intend to assert a fair use defense.  Mem. at

---

[4] Defendants' allegation that Plaintiffs "pervasively discriminated against African-American artists through dubious contracting practices and outright fraud," Mem. at 7 n.1, reeks of bitter irony—it is Defendants who exploit these artists' creations without *any* compensation or permission.  Defendants' potshot is irrelevant, inaccurate, and offensive.  Plaintiffs have worked hard to equitably compensate the artists from that time period who created many of the recordings at issue.  *See, e.g.*, Dan Rys, *How Sony's Legacy Artist Royalty Plan Is Both Generous and Savvy*, BILLBOARD PRO, https://www.billboard.com/pro/sony-music-legacy-royalties-analysis/ (Jun. 24, 2021); Glenn Peoples, *Sony Music Extends Program for Unrecouped Artists and Songwriters*, BILLBOARD PRO, https://www.billboard.com/pro/sony-music-artists-songwriters-forward/ (May 6, 2022); Chris Eggersten, *Universal Music to Waive Unrecouped Advances for Legacy Artists*, BILLBOARD PRO, https://www.billboard.com/pro/universal-music-group-waive-legacy-artists-songwriters-unrecouped-royalties/ (Mar. 31, 2022).

19–20 (describing "'fair use' under copyright law" as one of "Defendant's anticipated defenses"). The fair use factors include "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). Since all Plaintiffs have strong commercial connections to the New York market, and many of the works at issue are owned in and marketed from New York, this district is a locus of operative facts regarding fair use.

*Fourth*, Defendants exaggerate the extent to which the Northern District of California is the locus of operative facts related to their infringement. In claiming that "each step of this process [of digitization, uploading, and streaming] occurred in California," Mem. at 16, Defendants misstate the facts: the digitization—an infringement of the reproduction right, 17 U.S.C. § 106(1)—actually occurs in Pennsylvania, not California. Kahle Decl. ¶ 5. Further, Plaintiffs have asserted contributory infringement claims against both Blood and GBLP. "A contributory infringer is one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another." *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 99–100 (2d Cir. 2016) (quotation marks omitted). The locus of operative facts concerning Blood's and GBLP's knowledge of infringement and material contribution to Internet Archive's infringement is Pennsylvania—not California.

*Fifth*, this is an unusual copyright case in that the operative facts regarding Defendants' infringement appear to be largely uncontested and so are of less-than-normal significance. Defendants' motion largely concedes that Defendants reproduced and distributed protected sound recordings on a mass scale. For example, Defendants admit they "systematically digitize" sound recordings and that "sound recordings are digitized," Mem. at 1, 5—*i.e.*, infringement of the reproduction right. 17 U.S.C. § 106(1). Defendants also admit that, after digitizing the sound recordings, "the digital versions of the recordings are uploaded to the Great 78 Project's website

18

by the Internet Archive, where they can be accessed by researchers, historians, and members of

the public to stream online," Mem. at 6—*i.e.*, infringement of the public performance and

distribution rights.  17 U.S.C. § 106(3), (6).  As it appears Defendants will more heavily attempt

to contest ownership and assert fair use than challenge the allegations of their infringing conduct,

the significance of the locus of the operative facts regarding infringement wanes.

Defendants rely heavily on the "center of gravity" locution from *Viacom Int'l Inc. v.*

*Melvin Simon Prods., Inc.*  Mem. at 2, 16 (quoting 774 F. Supp. 858, 868 (S.D.N.Y. 1998)).  But

they quote that phrase out of context.  The full sentence is: "[t]he core determination under

§ 1404(a) is the center of gravity of the litigation, a key test of which is the convenience of

witnesses."  *Viacom*, 774 F. Supp. at 868.  As discussed below, the convenience of witnesses does

not support Defendants' argument that the Northern District of California is the center of gravity

of the litigation.  Given the geographic dispersion of the parties and the range of relevant issues,

there are several loci of operative facts in this case: New York, California, and Pennsylvania all

have connections to significant operative facts.  As such, this factor does not favor transfer.

### C.  The convenience of witnesses and the parties does not favor transfer because Defendants have not identified witnesses who would be inconvenienced and most witnesses are located outside the Northern District of California.

The convenience of witnesses does not favor transfer because Defendants have failed to

meet their burden of identifying the specific witnesses who would be inconvenienced without a

transfer and the likely subjects of their testimony.  "To meet its burden of demonstrating that

transfer is in the convenience of the witnesses, the party seeking transfer must specifically list the

evidence and witnesses on which the party intends to rely in the transferee district, along with a

general statement of the topics of each witness' testimony."  *Pilates, Inc. v. Pilates Inst., Inc.*, 891

F. Supp. 175, 183 (S.D.N.Y. 1995) (internal quotations omitted).  Defendants have manifestly

failed to do this, referring only to "Defendants themselves or other witnesses from the Internet

Archive," Mem. at 20, but never identifying who those "other witnesses" are or the subjects of their testimony.  For that reason alone, this factor weighs against transfer.  *Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 650 (S.D.N.Y. 2008) (holding that "Defendants have failed to make the required showing" to justify transfer where "Defendants have failed to provide the Court with an affidavit containing detailed factual statements identifying the potential principal witnesses expected to be called and a general statement of the substance of their testimony.").

Where the parties have identified witnesses, those witness lists show that convenience does not favor transfer.  Since Defendants filed their motion, the parties served Rule 26(a) disclosures, in which they identified "each individual likely to have discoverable information— along with the subjects of that information—that the disclosing party may use to support its claims or defenses."  Fed. R. Civ. P. 26(a)(1)(A)(i); Decl. of Corey Miller in Supp. of Pls.' Opp. to Defs.' Mot. to Transfer ¶¶ 1–3 ("Miller Decl.").  Those disclosures identify fifteen witnesses: eight employees of Plaintiffs and seven witnesses associated with Defendants.  Miller Decl. ¶¶ 3–5 and Exs. 1–3.  Of those fifteen, only six appear to be located in the Northern District of California.  *Id.*  None of Plaintiffs' witnesses is located in the Northern District of California; only one is in Southern California.  Goldman Decl. ¶ 7; Leak Decl. ¶ 4; McMullan Decl. ¶ 6.

Defendants' argument on witness convenience again elides key issues in the case not tied to the Northern District of California.  Defendants' argument that "[t]he primary witnesses with information about the Great 78 Project" are in Northern California, Mem. at 20, ignores that none of the witnesses with information about Plaintiffs' ownership are in the Northern District of California, none of Plaintiffs' witnesses on fair use are in the Northern District of California, and George Blood is not in the Northern District of California.

Defendants' witnesses are neither more numerous nor more important to the case than Plaintiffs' witnesses.  As transferring the case to San Francisco would simply shift the inconvenience from Defendants' witnesses to Plaintiffs', this factor cannot support transfer. *Mazuma Holding Corp. v. Bethke*, 1 F. Supp. 3d 6, 31 (E.D.N.Y. 2014) ("Where transfer would merely shift the inconvenience from one party to the other, the Court should leave plaintiff's choice of venue undisturbed.") (internal quotation marks omitted); *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 399 (S.D.N.Y. 2014) ("[T]he parties' convenience becomes a neutral factor in the transfer analysis if transferring venue would merely shift the inconvenience to the other party.") (internal citations and quotation marks omitted).

Defendants' argument that the Northern District of California is more convenient for Blood and witnesses from GBLP than the Southern District of New York flies in the face of basic geography.  An Amtrak train from Philadelphia to New York takes only approximately one hour and 30 minutes; a direct flight from Philadelphia to San Francisco takes approximately six hours and crosses three time zones.  Miller Decl. ¶¶ 6–7 and Exs. 4–5.  Nor can the fact that Blood "has an ongoing commercial relationship with Internet Archive and San Francisco," Mem. at 20–21, make the Northern District of California more convenient.  In any event, Blood and GBLP regularly conduct business in New York as well: GBLP's website lists the New York Public Library, Yeshiva University, the Museum of Jewish Heritage, Columbia University, and the Park Avenue Synagogue—all located in Manhattan—as GBLP's clients.  References, GEORGE BLOOD LP, https://www.georgeblood.com/references (last visited Nov. 7, 2023) (attached as Miller Decl. Ex. 6); About Us – Projects, GEORGE BLOOD LP, https://www.georgeblood.com/projects (last visited Nov. 7, 2023) (attached as Miller Decl. Ex. 7).

The availability of process to compel witness attendance does not favor the Northern District of California.  This factor typically only considers availability to compel *non-party* witnesses, as "employees of the parties will, as a practical matter, be available in any venue by virtue of the employment relationship."  *Medien Pat. Verwaltung AG v. Warner Bros. Ent.*, 749 F. Supp. 2d 188, 191 (S.D.N.Y. 2010).  Defendants' motion does not identify any relevant non-party witnesses, rendering this factor insignificant.  *Commodity Futures Trading Comm'n v. EOX Holdings LLC*, No. 18 CIV. 8890 (GBD), 2019 WL 5203661, at *7 (S.D.N.Y. July 31, 2019) ("[A]bsent an indication that a non-party witness is unwilling to testify in this case, the availability of compulsory process is immaterial . . . . .").  Even among their own party witnesses, Defendants have not identified a single witness who would be unwilling to testify in New York.  *Zohar CDO 2003–1, Ltd. v. Patriarch Partners, LLC*, 620 B.R. 456, 469 (S.D.N.Y. 2020) ("Because there is no indication that any witness will be unwilling to testify voluntarily, this Court finds that this factor is irrelevant.") (internal quotation marks omitted).

Finally, Defendants omit that Internet Archive recently litigated a major copyright infringement case in this district without seeking to transfer venue.  *See Hachette Book Group, et al. v. Internet Archive, et al.*, 20–CV–4160 (JGK), 2023 WL 2623787 (S.D.N.Y. Mar. 24, 2023).  Internet Archive's acquiescence to venue in *Hachette* suggests its burden of litigating in this district is hardly onerous.

### D.  Access to evidence does not favor transfer because there is no evidence the physical records at issue are in California and the physical 78-rpm records are minimally relevant.

Contrary to Defendants' claim, the access to evidence factor does not support transfer. Defendants' main argument that access to evidence supports transfer points to the location of physical 78-rpm records.  But, while Defendants claim generally that they store records in both California and Pennsylvania, Mem. at 6, 17; Kahle Decl. ¶ 5, they fail to disclose the crucial fact

of how many records are in each location.  Even more significantly, while Plaintiffs have alleged

infringement of 2,749 distinct sound recordings, *see* Compl. Ex. A, Defendants have not

indicated whether the physical records corresponding to those 2,749 sound recordings are in

California or Pennsylvania.  Defendants have therefore not carried their burden of demonstrating

this factor favors transfer.  And to the extent the majority of the records are in Pennsylvania—the

most likely location, as Internet Archive ships the records there for digitization, *see* Mem. at 5;

Kahle Decl. ¶ 5—the access to evidence factor favors New York, not California.

The physical records are also of little relevance here.  This case is about Defendants'

digitization and subsequent distribution of those *digital* copies.  The physical records themselves

have little bearing on those issues.  To the extent the "unique quirks and character" of the sound

recordings, Mem. at 19, have any relevance, Defendants can demonstrate them using the digital

copies they have already created.  And even if a few examples of physical records are relevant,

Defendants have not shown that this evidence would be difficult to transport.  To the contrary,

Defendants admit they regularly ship these records across the country.  *See* Kahle Decl. ¶ 5 ("The

Great 78 Project's digitization project involves shipping physical copies of records to George

Blood L.P. in Pennsylvania.").  To the extent needed, they could do so here as well.  *Atl.*

*Recording Corp. v. BCD Music Grp., Inc.*, No. 08 CIV. 5201 (WHP), 2009 WL 1390848, at *6

(S.D.N.Y. May 7, 2009) (finding that location of evidence factor does not weigh in favor of

transfer where movant "has made no showing that any particular documents or pieces of

evidence would be unduly burdensome to transport").

### E.  The interests of justice do not favor transfer because transferring the case to the Northern District of California would reward Defendants' attempt to forum-shop.

Defendants' attempt to transfer the case to the Northern District of California should be

rejected as improper forum shopping.  Earlier this year, a court in this district held Internet

23

Archive liable for copyright infringement and comprehensively rejected Internet Archive's fair use arguments for its systematic copying and distribution of copyrighted books.  *Hachette Book Grp., Inc. v. Internet Archive*, 2023 WL 2623787 (S.D.N.Y. Mar. 24, 2023).  No doubt chastened by that result, Defendants prefer to litigate this case, which raises similar issues, somewhere else. But that desire cannot justify transfer.  *Freeman v. Hoffmann-La Roche Inc.*, No. 06–CIV–13497 (RMB) (RLE), 2007 WL 895282, at *1 (S.D.N.Y. Mar. 21, 2007) ("The interests of justice require that this Court not reward forum shopping.").

<u>**Conclusion**</u>

Plaintiffs' choice of the Southern District of New York, which is SME's and Arista's home and which has a substantial connection to both the other Plaintiffs and the operative facts, is entitled to significant deference.  Defendants have failed to carry the heavy burden required to disturb that choice by showing by clear and convincing evidence that other factors strongly favor transfer.  For the reasons stated above, Plaintiffs respectfully request that Defendants' Motion to Transfer Venue be denied.

Dated: November 15, 2023

Respectfully submitted,

*/s/ Corey Miller*
Corey Miller
Matthew J. Oppenheim
Danae Tinelli
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue, NW, Fifth Floor
Washington, DC 20016
Tel:  202-480-2999
matt@oandzlaw.com
corey@oandzlaw.com
danae@oandzlaw.com

*Counsel for Plaintiffs*