UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UMG RECORDINGS, INC., CAPITOL RECORDS, LLC, CONCORD BICYCLE ASSETS, LLC, CMGI RECORDED MUSIC ASSETS LLC, SONY MUSIC ENTERTAINMENT, and ARISTA MUSIC,

*Plaintiffs*,

v.

INTERNET ARCHIVE, BREWSTER KAHLE, KAHLE/AUSTIN FOUNDATION, GEORGE BLOOD, and GEORGE BLOOD L.P.,

*Defendants*.

Case No. 1:23-cv-07133-LGS-JW

**REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO TRANSFER VENUE**

## TABLE OF CONTENTS

                                                                                                                               **Page**

PRELIMINARY STATEMENT ...........................................................................................................1

ARGUMENT ........................................................................................................................................2

I.      PLAINTIFFS CONCEDE THAT THE NORTHERN DISTRICT OF CALIFORNIA IS A PROPER FORUM IN WHICH THIS CASE MIGHT HAVE BEEN BROUGHT .........................................................................................................2

II.     THE TRANSFER FACTORS CLEARLY FAVOR THE NORTHERN DISTRICT OF CALIFORNIA ..........................................................................................5

          A.      The Locus Of Operative Facts Is The Northern District Of California, Where The Vast Majority Of The Allegedly Infringing Activity Occurred ............5

          B.      Plaintiffs' Choice Of The Southern District Of New York Is Entitled To Little Weight ...........................................................................................................7

          C.      Transfer To The Northern District Of California Would Make Access To Evidence And Witnesses Easier ............................................................................9

CONCLUSION...................................................................................................................................10

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Chloé v. Queen Bee of Beverly Hills, LLC*,
   616 F.3d 158 (2d. Cir. 2010) ............................................................................................. 5

*Cohn v. Metro. Life Ins. Co.*,
   2007 WL 1573874 (S.D.N.Y. May 31, 2007) ................................................................... 7

*CYI, Inc. v. Ja-Ru, Inc.*,
   913 F. Supp. 3d 16 (S.D.N.Y. 2012) ................................................................................. 7

*Garnish & Gather, LLC v. Target Corp.*,
   2019 WL 6729152 (S.D.N.Y. Dec. 11, 2019) ................................................................... 8

*Gucci America, Inc. v. Frontline Processing Corp.*,
   721 F. Supp. 2d 228 (S.D.N.Y. 2010) ............................................................................... 4

*Hachette Book Group, Inc. v. Internet Archive*,
   2023 WL 2623787 (S.D.N.Y. Mar. 24, 2023) ................................................................... 8

*Harris v. Brody*,
   476 F. Supp. 2d 405 (S.D.N.Y. 2007) ............................................................................... 7

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
   946 N.E.2d 159 (N.Y. 2011) .............................................................................................. 3

*Spinelli v. Nat'l Football League*,
   903 F.3d 185 (2d Cir. 2018) .............................................................................................. 7

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
   756 F.3d 73 (2d Cir. 2014) ................................................................................................ 6

*Walden v. Fiore*,
   571 U.S. 277 (2014) .......................................................................................................... 4

**STATUTES**

28 U.S.C.
   § 1404(a) ........................................................................................................................... 2
   § 1406(a) ........................................................................................................................... 2

**RULES**

N.Y. C.P.L.R. § 302(a)(3)(ii) ..................................................................................................... 3

## OTHER AUTHORITIES

*About*, Great 78 Project, Internet Archive,
  https://archive.org/details/georgeblood?tab=about (last visited Nov. 20, 2023) ....................... 7

## PRELIMINARY STATEMENT

Plaintiffs do not dispute that this case could have been brought in the Northern District of California. Nor do they dispute that personal jurisdiction is plainly proper there, or that the Northern District of California is a locus of operative facts, given the allegedly infringing activities Plaintiffs assert have taken place there. Instead, Plaintiffs double down on their argument that this case should not be transferred from New York because it was the Plaintiffs' choice of forum, and that choice should be entitled substantial deference. But when a plaintiff's chosen forum has little or no connection to the underlying dispute, the plaintiff's choice of forum is entitled to little weight. Here, the principal *infringement* that Plaintiffs allege occurred—the digitization and uploading for online streaming of historically significant 78 rpm records—has no connection to New York. To the contrary, the only real connection that this case has to New York is two Plaintiffs' presence here, other Plaintiffs' alleged business activity here and choice to litigate here, and some (unidentified, non-party) end-users' alleged downloading and streaming of recordings in New York. That is not only insufficient to transform New York into a "locus of operative facts" for purposes of a motion to transfer, it is also insufficient to create personal jurisdiction over Defendants Kahle, Blood, GBLP, or the Foundation—who are not alleged to have engaged in the streams to New York, or indeed to have directed any conduct at New York whatsoever. The significant questions regarding personal jurisdiction only underscore the questionable connection that this case has to New York and the propriety of transferring this case to a district that even Plaintiffs concede is indisputably proper—the Northern District of California.

Plaintiffs hypocritically accuse Defendants of filing this motion in an attempt to forum shop. In reality, the tenuous connection this case has to New York lays bare that it is Plaintiffs who have ulterior motives to litigate here. After taking no action for more than three years, Plaintiffs chose to sue in this irrelevant forum, with the same lawyers, mere hours after a stipulated

1

judgment was entered in *Hachette Book Group v. Internet Archive*, in the hopes they could ride that (erroneous) decision's coattails. In light of these considerations, the Court should grant the motion to transfer.

## ARGUMENT

### I.  PLAINTIFFS CONCEDE THAT THE NORTHERN DISTRICT OF CALIFORNIA IS A PROPER FORUM IN WHICH THIS CASE MIGHT HAVE BEEN BROUGHT

Plaintiffs concede (at 7 n.2) that this case could have been brought in the Northern District of California, because subject-matter jurisdiction, personal jurisdiction, and venue would exist in the Northern District of California. By contrast, there is at best a tenuous case for the Southern District of New York being a proper forum. As Defendants explained in their opening brief, the case for personal jurisdiction over Kahle, Blood, GBLP, and the Foundation is nonexistent at worst, or weak at best. *See* Mot. at 10-14 (ECF No. 49). Plaintiffs' dubious assertions of personal jurisdiction over these Defendants underscores both the threadbare-to-nonexistent connection that this litigation has to the Southern District of New York and the propriety of transferring this case to the Northern District of California, obviating the need for the Court to wade into these issues.

In response, Plaintiffs contend (at 7-9) that the question of whether personal jurisdiction exists in New York is irrelevant to this Court's consideration of this motion to transfer.[1] While

---

[1] Plaintiffs raise (at 8-9) Defendants' decision to file a motion under 28 U.S.C. § 1404(a) rather than 28 U.S.C. § 1406(a), and assert that Defendants have "conceded the irrelevance of personal jurisdiction" to this motion. As Plaintiffs note, Defendant Internet Archive has not contested personal jurisdiction in this Court. For that reason, it could not move under § 1406(a), even while Defendants Kahle, Blood, GBLP, and the Foundation could. By contrast, relief under § 1404(a) is sufficient to transfer this action as to *all* Defendants, and for that reason Defendants moved jointly under that provision. Moreover, that is consistent with the Court's decision to defer briefing on personal jurisdiction, and instruction that all Defendants file "a single transfer motion." ECF No. 44 at 1. To the extent the Court thinks that the distinction between the transfer provisions matters, Defendants have no objection to the Court's construing the motion by Defendants Kahle, Blood, GBLP, and the Foundation as one in the alternative under § 1406(a).

2

that may be true in the sense that determining personal jurisdiction in the Southern District of New York is not strictly necessary for the Court to decide whether to transfer this case to the Northern District of California, courts in this district regularly grant a motion to transfer in lieu of deciding hard jurisdictional questions. *See* Mot. at 13-14 (compiling cases). And should the Court deny this motion to transfer, the question of personal jurisdiction in this Court remains a live issue, and Defendants Kahle, Blood, GBLP, and the Foundation will move to dismiss for lack of personal jurisdiction. It is common sense that the doubts about personal jurisdiction are relevant here.

As for Plaintiffs' arguments for why this Court has personal jurisdiction, none of them holds up to scrutiny. Essentially, Plaintiffs' theory of personal jurisdiction requires attributing Defendant Internet Archive's contacts with New York (i.e., the availability of its website in New York, and New York users' downloading and streaming of recordings on the website) to Defendants Kahle, Blood, GBLP, and the Foundation. But that website and these streams only tie *the Internet Archive* to New York—not these other Defendants. And Plaintiffs' argument (at 11-12) that the New York long-arm statute reaches Kahle, Blood, GBLP, and the Foundation based on these streams and downloads alone cannot be reconciled with the New York Court of Appeals' decision in *Penguin Grp. (USA) Inc. v. Am. Buddha*, 946 N.E.2d 159 (N.Y. 2011). While Plaintiffs argue (at 11-12) that *Penguin* does not apply given "hundreds of thousands of streams and downloads in New York," that ignores *Penguin*'s clear language: "[I]s the situs of injury for purposes of determining long-arm jurisdiction under N.Y. C.P.L.R. § 302(a)(3)(ii) *the location of the infringing action* or *the residence or location of the principal place of business of the copyright holder*?" *Id.* at 161 (emphasis added). The answer, the Court of Appeals concluded, "is the location of the copyright holder." *Id.* The *Penguin* court thought it was irrelevant whether "actual downloading" happened in New York. *Id.* at 165. By the same logic, the situs of injury for

3

Plaintiffs' copyright claims—regardless of whether actual streaming or downloading happened in New York—is their residence or principal place of business, not the location of the infringing action (like streaming or downloading). At most that supports long-arm jurisdiction over claims by SME and Arista, and not the other Plaintiffs.

In any event, Plaintiffs' attempt to attribute Internet Archive's contacts to Kahle, Blood, GBLP, and the Foundation cannot satisfy federal due process principles. That is because *Internet Archive's* contacts with New York are not contacts that Kahle, Blood, GBLP, or the Foundation *themselves* made with New York. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphasizing that it is the connections "the defendant *himself* makes" with the forum). Plaintiffs again resist that conclusion by pointing to *Gucci America, Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228 (S.D.N.Y. 2010). But in that case the defendant payment processors had their own contacts with New York, namely "operat[ing] interactive websites available in New York" that "allowed customers from anywhere in the United States, including New York, to purchase [infringing] goods." *Id.* at 245. By contrast, Kahle, Blood, GBLP, and the Foundation have no independent connections to New York related to this case. If *Gucci* stands for the proposition that a contributory infringer that has *its own case-related contacts* in New York can be subject to personal jurisdiction in New York, then it is inapplicable to these Defendants, who lack any independent connection here. If it instead stands (as Plaintiffs suggest) for the proposition that *any* defendant that is alleged to have contributed to *someone else's* alleged infringement in New York is subject to personal jurisdiction here, then it is irreconcilable with *Walden*'s emphasis on the contacts that the defendant *herself* makes with the forum. 571 U.S. at 286 ("Due process requires that a defendant be haled into court in a forum State *based on his own affiliation with the State*, not based on the

'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." (emphasis added) (citation omitted)).

Nor have Plaintiffs alleged that Kahle, Blood, GBLP, or the Foundation "purposefully directed" or "expressly aimed" any conduct at *New York* in particular such that infringement in New York should have been expected or foreseeable by any of these four Defendants. *Cf. Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171-72 (2d. Cir. 2010). Moreover, Defendants Blood, GBLP, and the Foundation do not control or direct the Internet Archive's activities. Instead, Blood and GBLP are solely involved in digitizing records; and the Foundation has merely, in the past, donated to the Internet Archive for general support. How, given their attenuated connection to the actual downloading and streaming performed by end users of Great 78 Project, could these Defendants be expected to have sufficient "purposeful availment" of New York? This lack of independent minimum contacts with New York precludes personal jurisdiction here.

## II. THE TRANSFER FACTORS CLEARLY FAVOR THE NORTHERN DISTRICT OF CALIFORNIA

Plaintiffs' arguments cannot obscure that the Northern District of California is the district with the most significant connection to this litigation. When that substantial connection is considered alongside the weak connection that this case has to the Southern District of New York and the evidence that will be conveniently available in the Northern District of California, the interests of justice overwhelmingly favor transfer to the Northern District of California. Plaintiffs' choice of this district is entitled to little weight, and cannot outweigh these other factors.

### A. The Locus Of Operative Facts Is The Northern District Of California, Where The Vast Majority Of The Allegedly Infringing Activity Occurred

Plaintiffs argue (at 16-19) that Defendants "exaggerate" the connection that the Northern District of California has to this case, and assert that the Southern District of New York is "the locus of operative facts regarding ownership and fair use." Plaintiffs are wrong on both counts.

5

First, Plaintiffs do not dispute that the locus of operative facts as to Defendants' alleged infringement—by definition the core of a copyright *infringement* lawsuit—is the Northern District of California. Nor could they. By their own allegations, that is the place where Defendants receive many of their donations of physical 78 rpm records, where the Internet Archive manages the organization and digitization of those records, where many of the records are physically archived, where the Internet Archive manages and oversees its digitization partnership with GBLP, where the Internet Archive uploads digitized recordings, and where the Internet Archive maintains its servers that host the website for those digitized recordings to be streamed. *See* Mot. at 17. The only other place where allegedly infringing activity occurred is the Eastern District of Pennsylvania. *See* Mot. 18-19.

Second, Plaintiffs' assertions (at 16-18) that New York is "the" locus of operative facts as to ownership and fair use do not make sense. On the question of ownership, New York at most could be "*a*"—but not "*the*"—locus of operative facts as to ownership rights. While New York might be relevant to the ownership rights of SME and Arista, given that they are headquartered in New York, Compl. ¶¶ 22-23, the same logic would make California or Tennessee a locus of operative facts as to other Plaintiffs' ownership rights, Compl. ¶¶ 24-27. At best, the evidence on the question of ownership for Plaintiffs will be spread across multiple forums.

And as to the locus of operative facts for fair use, Plaintiffs' assertion fares even worse. For one thing, it is not obvious why New York would be a locus of operative facts—let alone "the" locus—as to Defendants' affirmative defense. That is particularly true when the defense of fair use involves a fact-intensive, "open-ended and context-sensitive inquiry" that will need to resolve questions like "the purpose and character of the use" for each of the recordings Defendants have digitized. *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 81 (2d Cir. 2014)

6

(citation omitted). Contrary to Plaintiffs' assertions, common sense dictates that the locus of operative facts on this question is plainly either the Northern District of California, from which the Internet Archive oversees the Great 78 Project, or the Eastern District of Pennsylvania, where GBLP carries out digitizing activities. *See* Mot. at 17-19. Moreover, there are relevant questions about whether end users' ultimate streaming and downloading of digitized recordings constitutes fair use, which would preclude secondary liability for any Defendant. *See Spinelli v. Nat'l Football League*, 903 F.3d 185, 197 (2d Cir. 2018). And California remains the most significant location for streaming, and therefore a locus of operative facts for fair use. *See, e.g.*, *About*, Great 78 Project, Internet Archive, https://archive.org/details/georgeblood?tab=about (last visited Nov. 20, 2023) (noting California had the most streams of any location over the last 30 days).

Fundamentally, Plaintiffs' attempt to parse out the elements and issues of this copyright suit to manufacture a way for New York to be "the" or "a" locus of operative facts for some portion of the case cannot obscure that, for this litigation as a whole, the Northern District of California has the strongest relationship with this case—and it is not a close call. *See CYI, Inc. v. Ja-Ru, Inc.*, 913 F. Supp. 3d 16, 21 (S.D.N.Y. 2012) (explaining that "the question that the locus of operative facts is directed toward" is assessing "the degree of relationship between the forum and the cause of action" as a whole). And even taking Plaintiffs' argument on its own terms, the Southern District of New York is not "the" or "a" locus of operative facts for the vast bulk of either ownership or the fair use inquiry. As a result, this factor "require[s]" or at least strongly favors transfer. *Cohn v. Metro. Life Ins. Co.*, 2007 WL 1573874, at *3 (S.D.N.Y. May 31, 2007).

**B.     Plaintiffs' Choice Of The Southern District Of New York Is Entitled To Little Weight**

As expected, Plaintiffs place the strongest emphasis on the fact that they chose this forum. But as Defendants explained in their opening brief (and as Plaintiffs do not dispute), the plaintiff's

7

choice of forum is entitled to little weight when "the operative facts have few meaningful connections to the plaintiff's chosen forum." *Harris v. Brody*, 476 F. Supp. 2d 405, 406 (S.D.N.Y. 2007). Despite Plaintiffs' best efforts to manufacture a reason why the Southern District has a meaningful connection to this case, those arguments do not hold water. *See supra* at 5-7.

And although Plaintiffs protest (at 15-16) that SME and Arista having their homes in New York should matter, the fact that only two of the six Plaintiffs can count the Southern District of New York as their home forum is plainly relevant to whether Plaintiffs' choice of forum is entitled to "substantial deference." *See Garnish & Gather, LLC v. Target Corp.*, 2019 WL 6729152, at *2 (S.D.N.Y. Dec. 11, 2019). To be sure, the fact that New York is the home forum for some plaintiffs but not others would matter less in a case in which New York City had a strong connection to the litigation under one of the other factors (such as a clear connection to the operative facts). But that is not this case. And here, when considered in light of the other factors, the fact that only two Plaintiffs reside here is yet more evidence of how tangential a connection this case has to New York. Indeed, even if *all* the Plaintiffs resided in New York, this case would still be a clear candidate for transfer because the operative facts regarding infringement have nothing to do with this district.

Finally, Plaintiffs accuse Defendants (at 23-24) of engaging in "improper forum shopping," and speculate that this motion is an "improper" attempt to avoid *Hachette Book Group, Inc. v. Internet Archive*, 2023 WL 2623787 (S.D.N.Y. Mar. 24, 2023). Those speculative accusations are overblown. Defendants' motive for transfer is much simpler and more straightforward: this case has nothing to do with the Southern District of New York, and everything to do with the Northern District of California. Moreover, *Hachette* involved different plaintiffs, different defendants, and a different theory of copyright infringement in a different medium, making its relevance to

8

assessing claims against the Great 78 Project limited. And as a district court opinion, it would have the same degree of nonbinding persuasive value to the Northern District of California judge who ultimately receives this case as it does to this Court.

To the extent anyone is open to a charge of "forum shopping" or tactical litigation, it is Plaintiffs, who conspicuously waited to bring this lawsuit until more than three years after their initial letter to Internet Archive asserting that the Great 78 Project infringed their copyrights; and when they finally did so, they filed suit in this district—which has no serious connection to Plaintiffs' allegations—mere hours after a stipulated judgment was entered in *Hachette*, represented by the same attorneys, in a misguided effort to leverage that decision to pressure Defendants. *See* ECF No. 215, *Hachette Book Grp., Inc. v. Internet Archive*, No. 1:20-cv-4160 (S.D.N.Y. Aug. 11, 2023).

At bottom, Plaintiffs' charge of forum shopping cannot distract from the fact that this case has no material connection to New York. It is not the locus (or even *a* locus) of operative facts for the allegations of infringement at the heart of this case, most Plaintiffs reside elsewhere, and it is neither the most convenient nor the most efficient place for this case to be litigated. In these circumstances, the importance of Plaintiffs' choice of forum is at its nadir.

### C. Transfer To The Northern District Of California Would Make Access To Evidence And Witnesses Easier

Plaintiffs downplay (at 22-23) the relevance of access to the physical 78 rpm records at the heart of this case, and fault Defendants (at 19-20) for failing to provide a full list of the witnesses that would be inconvenienced by travel to New York. But those records are obviously relevant in light of the fact that the entire purpose of the Great 78 Project is to archive and preserve these precious historical artifacts, as well as the unique sound produced by their physical construction. And as for the witnesses that will testify, Plaintiffs ignore the commonsense point that Defendants

Kahle and Blood are likely to be among the most important witnesses who will need to provide evidence, and for both the Northern District of California is more convenient.  Although Plaintiffs assert that it is "absurd" that Blood would find it more convenient to litigate and testify in California than in New York, the "absurdity" of that point is belied by Plaintiffs' own declarations, in which Plaintiffs' representatives assert that they regularly travel to New York from California or Tennessee in the course of business, and presumably consider New York more convenient than California.  *See* Decl. of Gregg Goldman ¶ 8 (ECF No. 54) ("Travelling to New York [from Tennessee] is significantly more convenient for me than traveling to San Francisco."); *accord* Decl. of Alasdair McMullan ¶ 7 (ECF No. 53).  Plaintiffs do not explain why it is any more "absurd" for Blood to consider San Francisco more convenient in light of established business relationships than it is for Goldman, McMullan, or others to prefer New York given similar distances.

In the end, the most Plaintiffs can say is that there is some evidence on their side of the scale on these factors.  But, on balance, these considerations still strongly favor the Northern District of California, because the bulk of the evidence will be produced from that district, and it is more convenient for the case's most important witnesses—Kahle and Blood.  In no event do these factors strongly support retaining this case in New York.

## CONCLUSION

In sum, the Northern District of California is the district with the strongest connection to this case; by contrast this litigation has no meaningful or material connection to this district.  For these reasons, Defendants' motion to transfer should be granted.

10

Dated: November 21, 2023
       New York, New York

    Respectfully submitted,

    **LATHAM & WATKINS LLP**

    */s/ Allison L. Stillman*
    Allison L. Stillman
    1271 Avenue of the Americas
    New York, NY 10020
    Tel: (212) 906-1200
    Fax: (212) 751-4864
    Email: alli.stillman@lw.com

    Andrew M. Gass (*pro hac vice*)
    505 Montgomery Street
    Suite 2000
    San Francisco, CA 94111
    Tel: (415) 391-0600
    Fax: (415) 395-8095
    Email: andrew.gass@lw.com

    Dennis Mai
    12670 High Bluff Drive
    San Diego, CA 92130
    Tel: (858) 523-5400
    Fax: (858) 523-5450
    Email: dennis.mai@lw.com

    Brent T. Murphy (*pro hac vice*)
    555 Eleventh Street, NW
    Suite 1000
    Washington, DC 20004
    Tel: (202) 637-2200
    Fax: (202) 637-2201
    Email: brent.murphy@lw.com

    *Attorneys for Defendants Internet Archive, Brewster Kahle, George Blood, and George Blood L.P.*

**CONRAD | METLITZKY | KANE LLP**

*/s/ Jesse Lanier\**
Jesse Lanier
Mark Conrad
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
Tel: (415) 343-7100
Fax: (415) 343-7101
Email: jlanier@conmetkane.com
    mconrad@conmetkane.com

*Attorneys for Defendant Kahle/Austin Foundation*

---

\* Defendants use electronic signatures with consent in accordance with Rule 8.5(b) of the Court's ECF Rules and Instructions.